# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEARJET INC. and BOMBARDIER AEROSPACE CORPORATION,  )<br>  )<br>　　Plaintiffs/Counterclaim Defendant,  )<br>  )<br>　　v.  )<br>  )<br>MPC PRODUCTS CORPORATION,  )<br>  )<br>　　Defendant/Counterclaim Plaintiff.  )<br>_____ ) | Case No. 05-1074-MLB-DWB |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Compel Disclosure of Defendant's Financial Information.[1] (Doc. 98.) Defendant has responded (Doc. 100), and Plaintiff has replied (Doc. 104). Having reviewed the submissions of the parties, as well as the exhibits and authority cited therein, the Court is prepared to rule on Plaintiff's motion.

## BACKGROUND

Plaintiff filed its Third Amended Complaint on January 6, 2006, which contained multiple claims relating to alleged breaches of commercial contracts, as

---

[1] Although the present motion is brought on behalf of both Plaintiffs, only Plaintiff Learjet, Inc. has stated a claim for punitive damages against Defendant to which the requested documents would be relevant. (*See* Doc. 41, at 28.) Thus, any reference to "Plaintiff" (in the singular) in this Order shall be to Learjet, Inc.

1

well as a claim for fraud.  (Doc. 41.)  Plaintiff seeks monetary damages, including "punitive damages in an amount to be determined . . ."  (*Id*. at pg. 28.)  Plaintiffs' claims are based on a 1994 Purchase Agreement and the 2001 Procurement Contract between the parties relating to a component of Defendant Learjet's Model 45 aircraft.

Plaintiff brings the present motion seeking an Order compelling Defendant to produce certain financial documents from 2001 to the present in addition to deposition testimony of a corporate representative of Defendant regarding "certain financial issues."  (Doc. 98, at pg. 1.)  Defendant counters by arguing that "its confidential financial information is not relevant to any jury trial issue, the information is confidential and proprietary, and plaintiff's discovery requests are overly broad."  (Doc. 100, at pg. 2.)

## DISCUSSION

**A.    Scope of Discovery and Burden on a Motion to Compel**.

In ruling on this motion, the Court has "broad discretion regarding its control of discovery," which is abused only "when a denial of discovery precludes a fair trial."  ***Gaines v. Ski Apache,*** 8 F.3d 726, 730 (10th Cir. 1993).  Fed.R.Civ.P. 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party."  The Rule also permits the Court to order discovery

into any matter relevant to the "subject matter involved in the action" for "good cause."  Fed.R.Civ.P. 26(b)(1).  Therefore, the Federal Rules broadly define the scope of discovery.

The particular discovery requests at issue must be relevant on their face. ***Williams v. Bd. of County Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000).  Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  *See* ***Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections); ***Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome").

Plaintiff seeks annual reports, balance sheets, profit and loss statements, income statements, income statements, federal tax returns, and "any other documents reflecting [Defendant's] overall financial condition" from 2001 to the present.  (Doc. 98, at pg. 1.)  Plaintiff contends this is discoverable because

> (1) Learjet has asserted a viable claim for punitive damages against MPC; (2) The Kansas Uniform Commercial Code requires MPC to provide adequate assurance to Learjet of MPC's continued performance of the 2001 Procurement Contract pursuant to K.S.A. 84-2-609, including adequate assurance of MPC's engineering, manufacturing, quality control and financial capabilities; and (3) MPC is required by Article 18.2 of the 2001 Procurement Contract between the parties to demonstrate its corporate financial stability.

(*Id*. at pg. 2.)

Defendant opposes these requests because it believes Plaintiff's claim for punitive damages is "spurious." (Doc. 100 at. 3.) Defendant argues that Plaintiff should not be allowed to rely upon mere allegations in the Third Amended Complaint to support the punitive damages claim, but rather should be required to provide "some presentation of information for the Court to satisfy itself there is a legal and factual basis for the claim . . ." (*Id*. at 4.) Defendant contends that Plaintiff has not made such a showing. Defendant also argues that Plaintiff should not be allowed to rely on the adequate assurance provision of K.S.A. 84-2-609 or Article 18.2 of the parties' contracts because Plaintiff has failed to request the information "in the normal commercial fashion." (*Id*. at pg. 12-13.) Defendant is also concerned about the confidential nature of the information requested. (*Id*. at 13-14.) Finally, Defendant argues that "there is no justification for immediate production of any financial records if the only basis for their discovery is

[Plaintiff's] punitive damage claim." (*Id*. at 14.) The Court shall address these arguments in turn.

**B.     Plaintiff's Punitive Damages Claim is not "Spurious."**

This Court has previously held that it "need only find that Plaintiff's claim for punitive damages is not spurious in order for discovery to proceed." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. March 26, 2007) (citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990) (holding that it was not necessary for plaintiff to make a *prima facie* showing of its entitlement to punitive damages, rather, plaintiff must only show that its claim for punitive damages is not spurious))). Pursuant to K.S.A. 60-3702(c), a plaintiff may recover punitive damages if he/she is able to establish by clear and convincing evidence that the defendant acted "with willful conduct, wanton conduct, fraud or malice." See *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 183 F.Supp. 1318, 1321 (D. Kan. 2002).

Count XI of Plaintiff's Third Amended Complaint states a claim for fraud and contains factual allegations to support that claim relating to representations by Defendant regarding the characteristics, use, handling, manufacturing, testing, inspections, and quality control, of the component at issue. (Doc. 41, at pg. 21-28.)

Plaintiffs also discuss how certain manufacturing processes regarding the component were allegedly changed without notice to or permission from Plaintiffs. *Id*. In reply to Defendant's arguments, Plaintiff provided more specific factual detail on these topics in support its punitive damages claims.[2]  (Doc. 104, at pg. 3-8.)

The Court thus finds that Plaintiff has established that its claim for punitive damages is not spurious and meets the threshold requirements for discovery of the requested financial data.  The burden, therefore, is on Defendant to establish a legal basis as to why the requested information should not be produced.

**C.     Statutory or Contractual Basis for Production of Financial Information**.

Defendant argues that Plaintiff should not be allowed to rely on the adequate assurance provision of K.S.A. 84-2-609 or Article 18.2 of the parties' contracts because Plaintiff has failed to request the information "in the normal commercial fashion." The Court is inclined to agree.

Plaintiff's Third Amended Complaint does not contain a claim alleging a

---

[2]  By finding that Plaintiff's claim for punitive damages is not spurious, the Court is not making a determination as to the legal sufficiency or overall merits of the punitive damages claim.

failure by Defendant to provide adequate assurances of due performance to Plaintiff pursuant to K.S.A. § 84-2-609. Regardless of whether Plaintiff has established "reasonable grounds for insecurity," Plaintiff apparently has not availed itself of its statutory right to make a written demand that Defendant provide such adequate assurances. *Id*.

The Court acknowledges that the 2001 Procurement Contract between the parties requires Defendant to "promptly advise [Plaintiff] of circumstances or incidents," including "corporate financial instability," that "could impact [Defendant's] performance of Contractual obligations." (Doc. 98, Exh. 1, at ¶ 18.2.) Again, however, Plaintiff's Third Amended Complaint is devoid of any allegation relating to an alleged failure by Defendant to so advise. (*See generally*, Doc. 41.) Further, Plaintiff's claim for fraud, the claim upon which Plaintiff seeks punitive damages, does not include any allegation that Plaintiff relied to its detriment on a fraudulent misrepresentation by Defendant of its financial condition. (*Id*., at pg. 21-28.) As such, the Court finds that the requested financial information is not calculated to lead to the discovery of admissible evidence that is relevant to a statutory or contractual claim in this case. *See* Fed.R.Civ.P. 26(b)(1).

**D.     Scope of Information to be Produced**.

The parties also disagree on the scope of financial information which should be produced.  This District discussed the scope of discoverable financial information in *Audiotext Communications Network, Inc. v. US Telecom, Inc.*:

> The court finds the current information of [a party's] net worth or financial condition relevant to the issue of punitive damages.  *See **Industrial Elec. Engineering & Testing Co. v. Dynalectric Co.**,* No. 87-2555-V, 1990 WL 80411, at *1 (D. Kan. May 18, 1990). The most recent annual reports and current financial statements of [the party] suffice to determine punitive damages. ***Watie v. Fredericks of Hollywood Stores, Inc.**,* No. 87-2118-O, 1988 U.S. Dist. LEXIS 9923, at *2 (D. Kan. Aug. 24, 1988). <u>All other financial information is irrelevant to determining punitive damages</u>.  *See id.;* ***Industrial Elec. Engineering & Testing Co.**,* 1990 WL 80411, at *1. "The relevant request is for the current financial status of [the party]." ***Industrial Elec. Engineering & Testing Co.**,* 1990 WL 80411, at *1.

No. 94-2395-GTV, 1995 WL 625962 at * 3 -4 (D. Kan. Oct. 5, 1995) (emphasis added).

Plaintiffs have requested Defendant's annual reports, balance sheets, profit and loss statements, income statements, income statements, federal tax returns, and "any other documents reflecting [Defendant's] overall financial condition" from 2001 to the present.  (Doc. 98, at pg. 1.)  Defendants contend that

> any financial information should be restricted to discovery of the current net worth of [Defendant] as

8

> reflected by its most recent annual report, if any, and current financial statements and/or credit information for relevant time periods. There is no justification for production of 'any other documents reflecting [Defendant's] overall financial condition.' And there is absolutely no support for production of federal tax returns.

(Doc. 100, at pg. 13.)

In their reply, Plaintiffs "concur that production of current annual reports and financial statements would provide appropriate information as to [Plaintiff Learjet's] punitive damage claim." (Doc. 104, at pg. 11.) The Court also concurs. Plaintiffs, however, continue by arguing that "historical financial information is needed" relating to "the adequate assurance issue and the requirement that [Defendant] demonstrate its corporate financial stability under Article 18.2 of the 2001 Procurement Contract." *Id*. As discussed in section C, above, the Court is not persuaded by such arguments.

As this Court noted in *Heartland*, "[t]here are other provisions of K.S.A. 60-3702 which might support discovery of additional financial information in certain cases," such as subsection (b)(3) which lists "the profitability of the defendant's misconduct." 2007 WL 950282, at *15. However, as in *Heartland*, Plaintiff has not

9

argued this as a basis for discovery of the requested financial information.[3]  *Id.*

Based upon the holding in ***Audiotext Communications Network, Inc.,*** the Court limits the financial information required from Defendant on the issue of punitive damages to the most recent annual reports and current financial statements of the Defendant measured at the time set forth below for Defendant to produce such information.  "The Court further notes that by delaying the production of this financial information to a point closer to trial, the information produced will, in fact, be more 'current' than information that would be produced now." ***Heartland Surgical Specialty Hosp.,*** 2007 WL 950282, at *15.  Thus, Plaintiff should not be prejudiced by this delay.  *Id.*

**E.     Access to Confidential Financial Information**.

Next, Defendant raises its concerns as to the confidential nature of the information requested.   (Doc. 100, at pg. 14.)  Defendant notes that the Protective Order currently in place would allow disclosure of its "confidential financial information to [Plaintiffs'] employees, including those currently engaged in

---

[3]  K.S.A. 60-3702(e) & (f) refer to a defendant's "highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded" and "the profitability of defendant's misconduct [that] exceeds or is expected to exceed" other specific statutory limitations.  This statutory language, however, sets "limitations for recovery rather than a grounds for recovery and therefore it would appear that they are applicable only to a defendant who seeks to limit the other statutory caps on punitive damages." ***Heartland***, 2007 WL 950282, at n. 18.

negotiations with [Defendant] on contractual matters." (*Id.*, citing Doc. 28.) Defendant also argues against production of the information to Plaintiff Bombardier, stating that Bombardier has no legitimate interest in this information because it has made no claim for punitive damages against Defendant.

Plaintiffs respond that they are "willing to restrict disclosure of Defendant's financial information to Learjet's in-house and outside counsel, in addition to Learjet's chief executive, who is an instrumental participant in the Plaintiffs' business, litigation and alternative dispute resolution strategy." (Doc. 104, at pg. 11.) Doing so "would preclude the necessity of Bombardier reviewing the documents, in accordance with Defendant's suggestion." (*Id.*, at pg. 12.)

While acknowledging Plaintiffs' willingness to compromise, the Court does not believe that Plaintiff's proposal goes far enough to protect Defendant's legitimate interest in the confidential nature of its financial information. The Court anticipates Learjet's CEO and in-house counsel would be involved in any current or future contract negotiations with Defendant. By Plaintiffs' own admission, Learjet's CEO "is an instrumental participant in the Plaintiffs' business . . ." (*Id.*, at pg. 11.)

The Protective Order in the ***Heartland*** case provides precedent that access to the produced financial documents of a party may be limited to outside counsel

11

and/or a limited number of in-house counsel who are not involved in "competitive decision-making." *See* No. 05-2164-MLB-DWB, Doc. 170; 2007 WL 950282, at *12.[4] Therefore, the financial information to be produced in accordance with this Order shall be restricted to Plaintiff's current outside trial counsel and to two in-house counsel for Plaintiffs who are not involved in current or future contract negotiations with Defendant.

F.     **Timing of Disclosures**.

Finally, Defendant argues that the request is premature. A similar argument was made in ***Heartland***, No. 05-2164-MLB-DWB, 2007 WL 950282. In that case, the undersigned magistrate judge noted that courts in this District have followed a "varied practice" in determining whether or not to delay discovery of financial information relating to a punitive damages claim. *Id*., at *13. As in ***Heartland***, this Court will not attempt to predict whether the amount of punitive damages in the present case, if any, will be determined by the trial judge pursuant to K.S.A. 60-3702(a) or by the jury.

However, because it is possible that this issue may be

---

[4] Other District Courts in the Tenth Circuit have allowed Protective Orders that limit access to "attorneys eyes only" documents to outside counsel while restricting access by in-house counsel and/or other party employees. *See **Transonic Systems, Inc. v. Non-Invasive Med. Tech.***, 192 F.R.D. 710 (D. Utah 2000); ***A Major Difference, Inc. v. Wellspring Products, LLC***, No. 06-0161-PSF-PAC, 2006 WL 4557906, at *3-5 (D. Colo. May 26, 2006).

> submitted to the jury for determination, the Court cannot simply agree to delay production of financial information indefinitely with the assumption that there will be a bifurcated trial. Instead, the Court will find that some of defendants' financial information is relevant on the issue of punitive damages, but the Court will stay the production of that information until later in the proceedings.

*Id.*, at *14.

As it did in ***Heartland***, this Court therefore **GRANTS** Plaintiff's motion to compel the production of the above-described financial information, but **STAYS** the actual production of the documents until the District Court determines whether Plaintiff's claim for punitive damages and/or the underlying fraud claim survive any dispositive motion filed by Defendant.[5]  Thus, Defendant will not be required to produce the financial records until the ***earliest*** of the following dates: (1) fifteen (15) days following a ruling by the trial court which denies a dispositive motion concerning Plaintiff's claims for fraud and/or  punitive damages; or (2) fifteen (15) days following the deadline for filing dispositive motions *if* there has been no dispositive motion directed to Plaintiff's fraud claim or claim for punitive

---

[5] As discussed above, the Court is not persuaded by Plaintiff's argument that it has a "contractual basis to obtain the requested financial information," (Doc. 104, at pg. 12) because that provision of the contract is not at issue in this lawsuit.  Further, Plaintiff has not indicated that it made an unsuccessful attempt to request the documents pursuant to the contract.

damages.

The Court notes that Plaintiff has also moved to compel deposition testimony of a corporate representative of Defendant on "certain financial issues." (Doc. 98, at pg. 1.)  Given the parameters the Court has placed on written discovery in this matter, Plaintiff's Motion to Compel such deposition testimony is **DENIED**, without prejudice.  Plaintiff may choose to revisit this issue, if necessary, following the production of the requested financial documents, if any, in accordance with this Order.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 98) is **GRANTED IN PART** and **DENIED IN PART** as set out in this Memorandum and Order.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 8th day of July, 2007.

          s/ DONALD W. BOSTWICK
          DONALD W. BOSTWICK
          U.S. MAGISTRATE JUDGE